IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DANNY PARAYNO MALBOG, | CIVIL NO. 20-00500 JAO-RT |
| Plaintiff, | |
| vs. | ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

## ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS

Plaintiff Danny Parayno Malbog ("Plaintiff") appeals Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's (the "Commissioner") denial of his application for social security disability benefits.  He asks the Court to reverse the Commissioner's finding that he is not disabled and remand the matter for a new administrative hearing.  For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this Order.

### I.     ADMINISTRATIVE PROCEEDINGS

On May 1, 2017, Plaintiff filed an application for social security disability benefits.  ECF No. 12-6 at 2–3.  The Social Security Administration ("SSA")

denied his application.  ECF No. 12-5 at 2–5.  Plaintiff sought reconsideration and the SSA again denied his claim for benefits.  *Id.* at 12–15.

At Plaintiff's request, the Administrative Law Judge ("ALJ") convened a hearing.  ECF No. 12-5 at 16–18, 53; ECF No. 12-3 at 29.  Plaintiff testified that he was unable to work because of his "heavy head and lightheadedness."  ECF No. 12-3 at 42.  Plaintiff explained that a variety of smells — such as coffee, rice steam, and perfume — cause Plaintiff's symptoms to become more severe.  *Id.* at 42–43.  Plaintiff said his "heavy head" differs from a headache and instead feels like "when you're having congestive nasal cavity and your head is just ready to explode."  *Id.* at 43.  Plaintiff described his lightheadedness as a loss of balance, but not dizziness.  *Id.* at 45–46.  Plaintiff also experiences a ringing in his ear and has hepatitis B, but is not symptomatic.  *Id.* at 47.

When the ALJ asked Plaintiff if he has trouble with depression or anxiety, Plaintiff said, "[n]ot at all," but immediately clarified that he "[s]ometimes [has] anxiety, but it's not affecting [his] life" and would not affect his ability to work.  *Id.* at 48.  Plaintiff also submitted as exhibits two letters supporting an earlier request to be excused from jury duty:  (1) a letter signed by Nurse Practitioner Johann Ross Hepner ("NP Hepner"), that stated that Plaintiff suffers from "Generalized Anxiety Disorder, with panic attacks" and that "[t]his condition is permanent"; and (2) a letter from Monique M. Canonico, DO ("Dr. Canonico"),

that indicated Plaintiff has a "disability caused by heavy head, burning nasal cavities and lightheadedness," which "is permanent."  ECF No. 12-8 at 149–50.

A vocational expert ("VE") classified Plaintiff's prior work as that of a computer operator in combination with a shipping and receiving clerk, and as a home attendant.  ECF No. 12-3 at 59.  The ALJ asked the VE if Plaintiff could perform his past work subject to the following restrictions:  the ability to work at the medium exertional level; the ability to lift or carry 50 pounds occasionally and 20 pounds frequently; the ability to stand and walk and/or sit for six out of eight hours; limited to frequent postural activities; no excessive fumes, odors, dust, gases, or poor ventilation; no hazardous machinery; no unprotected heights; and no ladders, ropes, or scaffolds.  *Id.* at 59.  The VE answered in the affirmative.  *Id.* at 60.  Plaintiff's counsel added the further requirement of the necessity to take an unscheduled 45-minute break each day, which led the VE to state that Plaintiff would not be able to perform his past work under that hypothetical.  *Id.*

On February 21, 2020, the ALJ issued his decision, *id.* at 16–24 (the "Decision"), finding and concluding as follows:

Step One

- Plaintiff has not engaged in substantial gainful activity since January 1, 2017, the alleged onset date.  *Id.* at 18.

Step Two

- Plaintiff has the following severe "medically determinable impairments" that significantly limit his ability to perform basic work activities: vasomotor rhinitis; headaches; and obstructive sleep apnea. *Id.* "The[se] impairments [we]re addressed in the discussion of [Plaintiff's RFC]." *Id.*

- Plaintiff also has the following non-severe "medically determinable impairments": Stage II chronic kidney disease, well controlled on medication; controlled diabetes; controlled hypertension; prostate/benign prostatic hyperplasia; gastroesophageal reflux disease; history of irritable bowel syndrome; chronic hepatitis B with stable liver function tests and a low viral load; and subjective mild tinnitus with mild to moderate high frequency sensorineural hearing loss in both ears. *Id.* at 18–19. Plaintiff's "medically determinable impairments, including those that are not severe," were considered when assessing Plaintiff's RFC. *Id.* at 19.

- Plaintiff has generalized anxiety disorder, somatic symptom disorder, and panic disorder. These "medically determinable *mental* impairments" "do not cause more than *minimal limitations* in [Plaintiff]'s ability to perform basic mental work activities and are therefore nonsevere." *Id.* at 19 (emphases added).

- With respect to the four broad functional areas of mental functioning listed in 20 C.F.R., Part 404, Subpart P, Appendix 1,[1] Plaintiff has "no limitations in understanding, remembering, or applying information, and no more than *mild limitations in the other functional areas*, consistent with [Plaintiff]'s testimony that sometimes he has anxiety, but it does not affect his life or his ability to work." *Id.* (emphasis added).

---

[1] These four broad functional areas include the following: "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.00.A.2.b.

<u>Step Three</u>

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). *Id.*

<u>Residual Functional Capacity ("RFC") Analysis</u>

- Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) subject to the following restrictions:  lift or carry 50 pounds occasionally and 20 pounds frequently; stand/walk for six out of eight hours; sit for six out of eight hours; frequent postural activities; no excessive fumes, odors, dusts, gases, or poor ventilation; no hazardous machinery or unprotected heights; and no ladders, ropes, or scaffolds. *Id.* at 20.

- Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms Plaintiff alleged, but Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical and other evidence. *Id.* at 20.

<u>Step Four</u>

- Plaintiff is capable of performing his past relevant work as a composite job of computer operator and shipping and receiving clerk, and as a home attendant, as neither job required the performance of work-related activities precluded by Plaintiff's RFC. *Id.* at 23.

<u>Conclusion</u>

- Plaintiff has not been under a disability from January 1, 2017 through the date of the Decision.

The ALJ's Decision became the Commissioner's final decision when the

Appeals Council denied Plaintiff's request for review of the Decision. *Id.* at 2.

## II.    LEGAL STANDARDS

### A.    Standard of Review

The decision of the Commissioner must be affirmed "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citation omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  To determine whether there is substantial evidence to support the ALJ's decision, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted).  If the record, considered as a whole, can reasonably support either affirming or reversing the ALJ's decision, the decision must be affirmed.  *See Hiler v. Astrue*, 687 F.3d 1209, 1211 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." (citation omitted)); *Burch*, 400 F.3d at 679.  The ALJ, as the finder of fact, is responsible for

6

weighing the evidence, resolving conflicts and ambiguities, and determining credibility.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Even where legal error occurs, the decision must be upheld "where that effort is harmless, meaning that it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks, citation omitted).

## B.     Eligibility for Disability Benefits

To be eligible for disability insurance benefits, a claimant must demonstrate that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, it may only be determined that a claimant is under a disability "if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Only disabilities existing before the date last insured establish entitlement to disability insurance benefits.  *See Sam v. Astrue*, 550 F.3d 808, 810

(9th Cir. 2008) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam)).

A five-step analysis is employed in evaluating disability claims.

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch*, 400 F.3d at 679; 20 C.F.R. § 404.1520. It is the claimant's burden to prove a disability in steps one through four of the analysis. *See Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citation omitted).

## III.   DISCUSSION

Plaintiff appeals the ALJ's conclusion that he is not disabled, arguing that the ALJ failed to incorporate his finding that Plaintiff had mild limitations relating

8

to his non-severe mental impairments in his formulation of Plaintiff's RFC. ECF No. 14 at 18–24. Plaintiff further argues that the ALJ erred in failing to consider NP Hepner's letter when determining Plaintiff's RFC. *Id.* at 24–28. The Court concludes that the ALJ committed legal error by failing to address any limitations relating to Plaintiff's mental impairments in his RFC, but that NP Hepner's letter did not constitute a medical opinion that the ALJ was required to consider.

## A.    Whether the ALJ Should Have Addressed Limitations Relating to Plaintiff's Mental Impairments in His Determination of Plaintiff's RFC

Plaintiff argues that the ALJ erred when he found that Plaintiff suffered from non-severe mental impairments at step two but failed to discuss any restrictions relating to those impairments in his construction of Plaintiff's RFC. ECF No. 14 at 18. At step two, the ALJ found that Plaintiff suffered from generalized anxiety disorder, somatic symptom disorder, and panic disorder, but that these impairments were non-severe because they "do not cause more than minimal limitations in [Plaintiff]'s ability to perform basic mental work activities." ECF No. 12-3 at 19. The ALJ found that Plaintiff has "no limitations in understanding, remembering, or applying information, and *no more than mild limitations in the other functional areas*." *Id.* (emphasis added).

Plaintiff principally relies on a line of cases beginning with the Ninth Circuit's unpublished memorandum disposition in *Hutton v. Astrue*, 491 F. App'x

850 (9th Cir. 2012).[2]  ECF No. 14 at 19.  In *Hutton*, the ALJ found that the claimant had post-traumatic stress disorder ("PTSD"), but because the claimant "suffered no limitation with respect to daily activities or social functioning, [had] 'mild' limitations in the area of concentration, persistence, or pace, and [had] no episodes of decomposition," the ALJ concluded the claimant's PTSD "existed but was 'nonsevere.'"  *Hutton*, 491 F. App'x at 850.  The court explained the ALJ was then required to consider the claimant's "'mild' limitations" due to his PTSD in determining the claimant's RFC because the SSA "consider[s] all . . . medically determinable impairments of which [it is] aware, including . . . medically determinable impairments that are not 'severe.'"  *Id.* at 850–51 (quoting 20 C.F.R. § 404.1545(a)(2)).  That the ALJ failed to do so constituted legal error.  *See id.*

In applying *Hutton*, district courts consistently require that ALJs discuss their own findings of limitations — including those posed by non-severe impairments — when formulating a claimant's RFC.  *See, e.g.*, *Gates v. Berryhill*, No. ED CV 16-00049 AFM, 2017 WL 2174401, at *2–3 (C.D. Cal. May 16, 2017)

---

[2]  The Commissioner argues that *Hutton* "has no real consequence" because it is not a published opinion.  ECF No. 15 at 17.  While unpublished decisions are not precedent, *see* Ninth Circuit Rule 36-3(a), the Court finds *Hutton* to be instructive as it is the clearest articulation of the Ninth Circuit's position regarding the ALJ's obligation to consider limitations posed by non-severe impairments in formulating a claimant's RFC.  It is unclear why the Court should ignore *Hutton* when the holding there did little more than instruct ALJs to follow 20 C.F.R. § 404.1545(a)(2)) in crafting decisions.  And as further explained herein, district courts across the Ninth Circuit routinely follow *Hutton* when addressing this issue.

(explaining that the ALJ erred by failing to include "an actual consideration and reasoned determination" regarding the plaintiff's "nonsevere limitation in social functioning" arising from a "nonsevere mental impairment" in determining the RFC); *Uranna G. v. Saul*, No. 3:18-cv-02117-RNB, 2019 WL 5342537, at *4 (S.D. Cal. Oct. 21, 2019) (reversing an ALJ's decision where the ALJ "found mild limitations in two of the broad functional areas" and "determined that plaintiff's . . . anxiety was non-severe," but failed to include "any reasoned consideration of the mild limitations caused by plaintiff's anxiety impairment in consideration with [its RFC finding]" (citation omitted)); *Kathleen S. v. Saul*, No. 3:19-cv-00651-JLS-RNB, 2020 WL 353602, at *8–9 (S.D. Cal. Jan. 21, 2020) (recommending the ALJ's decision be reversed as it did "not contain any discussion or reflect any reasoned consideration of the mild limitations caused by plaintiff's mental impairments in connection with [its RFC finding]" (citation omitted)), *report and recommendation adopted*, No. 19-CV-651 JLS (RNB), 2020 WL 2848150 (S.D. Cal. June 2, 2020); *Aida I. v. Saul*, No. 3:19-cv-00476-AJB-RNB, 2020 WL 434319, at *3–5 (S.D. Cal. Jan. 28, 2020) (recommending that the court conclude the ALJ erred by failing to "include . . . specific mild functional limitations [arising out of non-severe mental impairments] in his RFC assessment or in his hypotheticals to the VE"), *report and recommendation adopted*, No. 3:19-cv-00476-AJB-RNB, 2020 WL 1905356 (S.D. Cal. Apr. 17, 2020).  But requiring an

ALJ to "consider" the limiting effect of all impairments regardless of their severity, "does not require [the ALJ] in every case to 'include' those limitations in the RFC determination." *Aranda v. Berryhill*, No. 5:16-CV-00542 (VEB), 2017 WL 3399999, at *6 (C.D. Cal. Aug. 8, 2017); *see id.* (highlighting that "the ALJ *expressly stated* that her RFC determination incorporated the social and concentration/persistence/pace limitations assessed at steps two and three," thereby demonstrating the claimant's mild limitations "were adequately considered and accounted for in the RFC determination" (emphasis added)).

Courts have held that *Hutton* is distinguishable in cases where it was clear from the record that the ALJ considered and discussed limitations associated with the claimant's non-severe impairments in constructing the claimant's RFC.  In *Thompson v. Saul*, No. 1:18-cv-00137-BAM, 2019 WL 3302471 (E.D. Cal. July 23, 2019), the court explained that the ALJ sufficiently considered evidence relating to the claimant's minor limitations when, at step four, the ALJ expressly discussed and gave only partial weight to medical opinion evidence that the claimant's "psychological conditions affected [her] physical condition and frequently interfered with her ability to perform even simple tasks." *Thompson*, 2019 WL 3302471, at *7 (citation omitted).  Similarly, in *George A. v. Berryhill*, No. 5:18-cv-00405-AFM, 2019 WL 1875523 (C.D. Cal. Apr. 24, 2019), the court determined that *Hutton* was inapplicable because the "ALJ properly considered

12

[the claimant]'s non-severe mental impairments at step four" by evaluating opinion evidence related to the claimant's mental and social abilities in the context of the workplace. *George A.*, 2019 WL 1875523, at \*4–5; *see also Lindsay v. Berryhill*, No. SACV 17-01545-AFM, 2018 WL 3487167, at \*6 (C.D. Cal. July 18, 2018) (distinguishing *Hutton* and explaining that "the ALJ expressly considered all of the evidence related to [the claimant]'s mental impairments at step four before concluding that those non-severe impairments did not necessitate inclusion of any limitation in the RFC.").

The facts here mirror those in *Hutton* and its progeny.  In support of his findings, the ALJ noted that an examination of Plaintiff's mental status "generally showed anxious mood and affect; limited insight, with somatic focused thoughts; fair to limited judgment; circumstantial, rambling, tangential, and preservation of thoughts; but also good eye contact, fair interpersonal relatedness, grossly intact memory, adequate language and fund of knowledge, and intact attention span and concentration."  ECF No. 12-3 at 19.  The ALJ also found persuasive a state agency's psychological consultant's findings that Plaintiff had "no more than mild limitations in the 'paragraph B'[3] criteria."  *Id.*  Based on these findings, the ALJ concluded that Plaintiff's mental impairments "cause no more than a 'mild' limitation in any of the functional areas and the evidence does not otherwise

---

[3]  *See supra* note 1.

indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." *Id.* Thus, it is clear from the ALJ's analysis at step 2 that Plaintiff's non-severe mental impairments created at least *some* limitation on Plaintiff's functional abilities, even if that limitation was "mild." *See id.*

Despite the ALJ's finding that Plaintiff's non-severe mental impairments caused at least some limitation, the ALJ only specifically addressed physical restrictions in Plaintiff's RFC. *Id.* at 20–22. And the ALJ did not link any of these restrictions to Plaintiff's non-severe mental impairments, but instead indicated that these restrictions were related to Plaintiff's vasomotor rhinitis, headaches, and obstructive sleep apnea. *See id.* at 20–22. Nor did the ALJ explain *why* he did not include any restrictions relating to Plaintiff's mental impairments in his RFC. *See id.*

The Commissioner raises several arguments in an effort to distinguish this case from *Hutton*, none of which the Court finds compelling.[4]

First, the Commissioner argues that even if the ALJ did not "set forth in any detail how mild, non-severe impairments that [Plaintiff] insists do not affect his ability to work would affect his ability to work," the ALJ nonetheless "explained that he 'considered all of [Plaintiff]'s medically determinable impairments,

_____

[4] The Court discusses the Commissioner's arguments in a different sequence than the manner in which they were presented in the Commissioner's Answering Brief. *See generally* ECF No. 15.

including those that are not severe, when assessing the claimant's [RFC].'"  ECF No. 15 at 18 (quoting ECF No. 12-3 at 19) (the "statement").  But that is not enough.  The Decision must "reflect an actual consideration and reasoned determination as to why [a] limitation [due to medically determinable mental impairments] was not included in the RFC."  *Gates*, 2017 WL 2174401, at *3.  For this Court, therefore, to "find[] the required consideration by 'inference' is inconsistent with *Hutton*, the subsequent district court decisions, and the regulation, and it would encourage use of boilerplate language as opposed to actual assessment of all impairments in arriving at an RFC."  *Id.* (footnote omitted).

Consistent with *Gates*, other courts have held that general assertions, such as the ALJ's statement here, do not satisfy the SSA's obligation to consider all limitations — including those caused by non-severe impairments — when crafting a claimant's RFC.  *See, e.g., Barrera v. Berryhill*, No. CV 17-07096-JEM, 2018 WL 4216693, at *5 (C.D. Cal. Sept. 5, 2018) (reversing the ALJ's decision where she "did not say she had considered mild limitations or nonsevere impairments, offering only boilerplate language that she considered 'all symptoms'" (citation omitted)); *Carlson v. Berryhill*, No. 18-cv-03107-LB, 2019 WL 1116241, at *17 (N.D. Cal. Mar. 10, 2019) (holding that the ALJ did not sufficiently consider mild limitations and "offered only boilerplate language that the plaintiff's RFC 'reflects the degree of limitation . . . found in [the] paragraph B mental function analysis'"

15

(footnote, citation, and some internal quotation marks omitted)).  Indeed, if generalized language were sufficient, it would be difficult for reviewing courts to determine whether an ALJ's RFC determination, especially those addressing restrictions (or the lack of any such restrictions) arising out of non-severe impairments, was supported by substantial evidence.  Thus, here, without "an actual consideration and reasoned determination" of the mild limitations posed by Plaintiff's mental impairments, *Gates*, 2017 WL 2174401, at *3, the Court cannot discern whether the ALJ intentionally omitted any restrictions relating to these impairments, and, if so, why.  Accordingly, for all of these reasons, the ALJ's general statement that he considered "all of [Plaintiff's] medically determinable impairments, including those that are not severe" does not remedy the ALJ's failure to include any discussion of Plaintiff's limitations caused by his non-severe mental impairments in his construction of Plaintiff's RFC.

Second, the Commissioner contends that the ALJ properly relied on two medical findings where "doctors indicated only mild limitations or abnormalities, and did not indicate any restrictions in what kind of work Plaintiff could perform." ECF No. 15 at 16.  At step two, the Commissioner did indeed discuss a mental status exam regarding Plaintiff's general mental state and, more crucially, "the state agency psychological consultants' [finding of] no more than mild limitations in the 'paragraph B' criteria."  ECF No. 12-3 at 19.  But the Commissioner's

argument betrays the conflict between the ALJ's decision and *Hutton*.  Under *Hutton*, it is imperative that the ALJ consider even mild limitations arising out of non-severe impairments into a claimant's RFC.  *See Hutton*, 491 F. App'x at 850–51.  Here, the ALJ found persuasive the psychological consultant's finding that Plaintiff did indeed have mild limitations because of his mental impairment, but nonetheless failed to explain those limitations or evaluate them in Plaintiff's RFC.

Third, the Commissioner points out that Plaintiff testified at the hearing that his anxiety would not affect his ability to work, and argues that the ALJ therefore reasonably relied on  Plaintiff's testimony and characterization of his symptoms.  ECF No. 15 at 17–18.  However, the ALJ found that Plaintiff had somatic symptom disorder and panic disorder, in addition to generalized anxiety disorder.  ECF No. 12-3 at 19.  Thus, even if the ALJ accepted Plaintiff's conclusion regarding the effect of his anxiety on his ability to work, the ALJ nonetheless did not discuss Plaintiff's other mental impairments in determining Plaintiff's RFC.[5]

---

[5]  It is worth noting that Plaintiff contends somatic symptom disorder is "'characterized by physical symptoms or deficits that . . . cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience.'"  ECF No. 16 at 16 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07).  Therefore, it is possible that there is no inconsistency between Plaintiff's assertion that his anxiety does not affect his ability to work and the fact that Plaintiff's mental impairments (including his somatic symptom disorder) do indeed pose limitations on his ability to work.

Fourth, the Commissioner relies on the Ninth Circuit's holdings in *Bray v. Commissioner of Social Security Administration*, 554 F.3d 1219 (9th Cir. 2009), and *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007), for the proposition that even severe impairments do not necessarily result in a finding of specific restrictions in an RFC.  ECF No. 15 at 13–14.  But those cases do not vitiate *Hutton*'s direction that ALJs must at least consider any restrictions that any impairments, severe or non-severe, may pose in the RFC evaluation.  *See Kramer v. Astrue*, No. CV 12-5297-MLG, 2013 WL 256790, at *3 (C.D. Cal. Jan. 22, 2013) ("*Hoopai* is silent on the matter at issue here, whether the ALJ must include mild mental limitations in his assessment of a claimant's RFC.  This issue, however, is directly addressed by *Hutton*.").

Fifth, the Commissioner posits that this Court in *Cooper v. Saul*, CIVIL NO. 19-00538 JAO-RT, 2020 WL 2735384 (D. Haw. May 26, 2020), previously agreed with her interpretation of *Bray* and *Hoopai*.  ECF No. 15 at 14.  In *Cooper*, the plaintiff made a similar argument to the one Plaintiff urges here:  "Plaintiff argues that the ALJ's failure to consider his migraines in the RFC assessment, even though the ALJ found the migraines to be a severe impairment at step two, amounts to reversible legal error."  *Cooper*, 2020 WL 2735384, at *4 (citation omitted).  However, the similarities between *Cooper* and this case stop there.  In *Cooper*, "the record [was] replete with references to Plaintiff's migraines," but

18

there was no "evidence that the migraines impacted Plaintiff's ability to work." *Id.* Instead, "[t]he evidence relied upon by the ALJ demonstrate[d] that Plaintiff's migraines could be controlled by medication." *Id.* at *5. And the ALJ ultimately "found Plaintiff to have *greater* limitations than those identified in the [medical] opinions, based on later-presented evidence." *Id.* Thus, "the ALJ . . . did not fail to include limitations for Plaintiff's migraines in the RFC." *Id.* at *5 n.5. Unlike in *Cooper*, in this case, the ALJ credited opinion evidence stating that Plaintiff had mild limitations resulting from his non-severe mental impairments, but did not address those limitations in the RFC.

Finally, the Commissioner maintains that Plaintiff failed to meet his burden of proving that he cannot perform his past relevant work due to his non-severe mental impairments, which amounts to a harmless error argument. ECF No. 15 at 15. While the Court can affirm even if the ALJ commits legal error, the Court may only do so where the error is "inconsequential to the ultimate nondisability determination," or where "the agency's path may reasonably be discerned." *See Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). Here, the ALJ found that Plaintiff's non-severe mental impairments created mild limitations on Plaintiff's functional areas, ECF No. 12-3 at 19, and the Court cannot discern from the ALJ's Decision whether these mild limitations gave rise to any restrictions. Accordingly, it similarly cannot discern whether Plaintiff can

perform his past work notwithstanding these mild limitations.  The ALJ's legal

error is therefore not harmless.  *See Brown-Hunter*, 806 F.3d at 492.

Where the ALJ fails to include a claimant's mild limitations arising out of a

non-severe impairment into the claimant's RFC, the remedy is to remand the case

to the ALJ for further proceedings so that the ALJ can fully and correctly assess

the claimant's RFC.  *See, e.g.*, *Aida I.*, 2020 WL 434319, at *5–6; *Carlson*, 2019

WL 1116241, at *18.

## B.     Whether the ALJ Should Have Considered NP Hepner's Letter

Plaintiff argues that the ALJ erred in failing to consider NP Hepner's letter,

which Plaintiff characterizes as a medical opinion.  ECF No. 14 at 24.  The SSA's

regulations require that "[w]hen a medical source provides one or more medical

opinions or prior administrative medical findings, [it] will consider those medical

opinions or prior administrative medical findings from that medical source."  20

C.F.R. § 404.1520c(a).  "Where an ALJ does not explicitly reject a medical

opinion or set forth specific, legitimate reasons for crediting one medical opinion

over another, he errs."  *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100

F.3d 1462, 1464 (9th Cir. 1996)).  "In other words, an ALJ errs when he rejects a

medical opinion or assigns it little weight while doing nothing more than ignoring

it, asserting without explanation that another medical opinion is more persuasive,

or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012–13 (citing *Nguyen*, 100 F.3d at 1464).

The regulations further provide the following definition of a medical opinion:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (For claims filed (see § 404.614) before March 27, 2017, see § 404.1527(a) for the definition of medical opinion.)
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).  Plaintiff is correct that there is no indication the ALJ considered NP Hepner's letter in his Decision.  *See generally* ECF No. 12-3 at 16–24.  The question is therefore whether NP Hepner's letter actually constitutes a medical opinion.

NP Hepner's letter is one page and requests that Plaintiff be excused from jury duty because he suffers from generalized anxiety with panic attacks.  ECF No. 12-8 at 150.  Other than characterizing these conditions as "permanent," NP Hepner offers no further information regarding Plaintiff, Plaintiff's medical condition, or any limitations caused by Plaintiff's medical condition.  *See id.*  NP Hepner's letter is therefore not a medical opinion insofar as it does not state what Plaintiff "can still do despite [his] impairment(s)," *see* 20 C.F.R. § 404.1513(a)(2), and so the ALJ was not required to consider it.  *See Bogart v. Comm'r of Soc. Sec.*, No. 2:19-cv-0584-KJN, 2020 WL 5535402, at *4 (E.D. Cal. Sept. 15, 2020) (holding that the ALJ did not err in failing to consider "one-page letters" that "merely list plaintiff's diagnoses, . . . restate some of her subjective symptoms," and "conclude that plaintiff is limited in her ability to carry out daily activities and limited in her ability to work" (citations omitted)).

Plaintiff argues that the Commissioner's characterization of NP Hepner's letter as a non-medical opinion is inconsistent with the ALJ's consideration of Dr. Canonico's medical opinion because the two opinions were "nearly identical" and the ALJ "determined Dr. Canonico's opinion to directly address the key issue in this case, which is whether [Plaintiff] can work or is disabled."[6]  ECF No. 14 at 26

---

[6]  At the hearing, Plaintiff made a different argument regarding Dr. Canonico's medical opinion, contending that it did not meet the definition of a medical

(continued . . .)

(citation omitted); *see* ECF No. 16 at 18.  But there is a distinct difference between the two letters:  Dr. Canonico's characterized Plaintiff as having a "disability" that is "permanent," ECF No. 12-8 at 149, while NP Hepner's did not characterize Plaintiff's condition as a disability.  *See id.* at 150.  The Commissioner's position is therefore not inconsistent with the ALJ's consideration of Dr. Canonico's opinion, which the ALJ ultimately rejected in any event.

The ALJ therefore did not err in failing to consider NP Hepner's letter.

//

//

//

//

//

//

//

//

//

---

(. . . continued)
 opinion, and that the ALJ should therefore have considered NP Hepner's letter along with Dr. Canonico's.  Even assuming that Dr. Canonico's letter did not meet the definition of a medical opinion, Plaintiff did not identify any authority — and the Court is not aware of any — that requires an ALJ to consider evidence that is not a medical opinion simply because the ALJ also considered separate opinion evidence that also is not a medical opinion.

## IV.   CONCLUSION

For the reasons set forth above, the Commissioner's decision denying

Plaintiff's application for social security disability benefits is REVERSED.  This

case is REMANDED for further administrative proceedings consistent with this

Order.  The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, October 12, 2021.



Jill A. Otake
United States District Judge

CIVIL NO. 20-00500 JAO-RT; *Malbog v. Kijakazi*; ORDER REVERSING DECISION OF
COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS

24